**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

HAYDEN L. RYAN
20 Prentiss Street
Monroeville, Ohio 44847

and

JODI REISING
20 Prentiss Street
Monroeville, Ohio 44847

and

CASEY RYAN
20 Prentiss Street
Monroeville, Ohio 44847

PLAINTIFFS,

v.

MONROEVILLE LOCAL SCHOOLS BOARD OF EDUCATION
101 West Street
Monroeville, Ohio 44847

and

DR. KRISTIN KAPLE-JONES, individually and in her official capacity as Superintendent of Monroeville City Schools
101 West Street
Monroeville, Ohio 44847

and

JAMES KACZOR, individually and in his official capacity as Former Principal of Monroeville Middle and High School
169 West Main Street
Norwalk, Ohio 44857

101 West Street
Monroeville, Ohio 44847

and

**CASE NO.**

**JUDGE**

**COMPLAINT**

**JURY TRIAL DEMANDED**

HOLLY BAUER, individually and in
her official capacity as a former
employee of Monroeville City Schools
4186 Peru Center Road N
Monroeville, Ohio 44847

DEFENDANTS.

## I. NATURE OF THE ACTION

1. This is a civil-rights and personal-injury action arising from the sustained sexual abuse of a middle-school student, Hayden Ryan ("Hayden"), by his teacher, Defendant Holly Bauer ("Bauer"), and from the deliberate indifference, recklessness and gross neglect of Monroeville Local School District through the Monroeville Local Schools Board of Education (hereinafter referred to as the "District") to that abuse.
2. Beginning on or around January 15, 2022, when Hayden was thirteen years old, Bauer, a Monroeville eighth-grade Social Studies teacher, engaged in repeated sexual conduct with Hayden, including sexual intercourse.
3. That conduct continued through at least September 9, 2023. Hayden has stated that he had sex with Bauer more than twenty times, that he was forced into it, and that he "couldn't leave the situation."
4. The District's own Title IX Appeal Decision Maker, in a final resolution issued June 5, 2025, found that "the evidence does support the conclusion that Respondent engaged in serious misconduct," including "the grooming of a child, violations of criminal law, and violations of a directive she had received from the District to maintain a professional relationship with Complainant," and reversed the original decision maker's contrary Title IX finding, concluding that Bauer's "pattern of conduct . . . meets the threshold of sexual harassment under the Board's policy."
5. The District knew through repeated reports, no later than May 2022, that an adult teacher was engaged in an inappropriate, sexualized relationship with a thirteen-year-old male student under the watch of the District.

6. Complaints were made by teachers, community members, and parents. The District was aware that this misconduct was occurring during the school day and on school property.
7. Photographs and firsthand reports were delivered directly to Superintendent Dr. Kristin Kaple-Jones.
8. Contemporaneous internal District emails acknowledged that staff-student "lines and boundaries are completely blurred, if not crossed" and that the situation was "a serious struggle." The Superintendent herself would later admit that "a thorough investigation should have been completed in 2022."
9. Despite that actual notice, the District's response was clearly unreasonable. It issued a verbal directive to "maintain a professional relationship," followed by a written reprimand for "an inappropriate and unprofessional relationship with a student … engaging in unwarranted physical contact … and using the student in furtherance of personal errands." The District did not separate Bauer from Hayden, did not notify Hayden's parents, did not open a Title IX investigation, and did not effectively report the matter to child-protective authorities. Bauer remained in the classroom with unsupervised access to Hayden for more than two additional years, during which the sexual abuse continued and escalated.
10. Plaintiffs bring this action under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*; the Fourteenth Amendment to the United States Constitution, enforced through 42 U.S.C. § 1983; and Ohio common law, for damages caused by Bauer's abuse and the District's deliberate indifference.

## II. JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), as Plaintiffs assert claims arising under Title IX, 20 U.S.C. § 1681 *et seq.*, and 42 U.S.C. § 1983.
12. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative fact as the federal claims.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Monroeville, Huron County, Ohio, within the Northern District of Ohio, Western Division.

## III. PARTIES

14. Plaintiff Hayden Ryan is an adult resident of Monroeville, Huron County, Ohio. He was a minor at all times relevant to the conduct alleged herein, and at all such times was enrolled as a student at Monroeville Local School District. Having attained the age of majority, he brings this action in his own right.

15. Plaintiffs Jodi Reising and Casey Ryan are the natural birth parents of Hayden Ryan and were his legal guardians throughout his minority. They bring this action in their individual capacities for their own derivative claims arising from the injuries inflicted on Hayden while he was a minor in their care and for the loss of consortium that they endured.

16. Defendant Monroeville Local Schools Board of Education is the governing body of the Monroeville Local School District, responsible for adopting, implementing, and enforcing policies concerning student safety, staff conduct, Title IX compliance, mandatory reporting, hiring, retention, training, and supervision of District personnel. Monroeville Local School District is a public school district organized and operating under the laws of the State of Ohio, with its principal offices at 101 West Street, Monroeville, Ohio 44847. The District receives federal financial assistance within the meaning of 20 U.S.C. § 1681(a) and is a recipient and educational institution subject to suit under Title IX. At all relevant times, the District employed Holly Bauer as a teacher.

17. Defendant Holly Bauer is, and at all relevant times was, a resident of Ohio. From August 2021 until her release from employment on November 12, 2025, she was employed by the District as an eighth-grade Social Studies teacher and served as junior high advisor, junior high and high school cross-country coach, and junior high

track coach. She is sued in her individual capacity and at all relevant times as an employee of Monroeville City Schools.

18. Defendant Dr. Kristin Kaple-Jones is, and at all relevant times was, a resident of Ohio. At all relevant times, she served as Superintendent of Monroeville Local School District, had authority to institute corrective measures on behalf of the District, received reports concerning Bauer's conduct with Hayden, and is sued in her official and individual capacity.

19. Defendant James Kaczor is, and at all relevant times was, a resident of Ohio. At all relevant times material to this Complaint, he served as Principal of Monroeville Middle and High School, had authority and responsibility for supervising District staff and protecting students under his charge, personally received reports concerning Bauer's conduct with Hayden, and is sued in his individual capacity and in his official capacity as Principal. Service on Defendant Kaczor may be made at 101 West Street, Monroeville, Ohio 44847.

## IV. FACTUAL ALLEGATIONS

### A. Bauer's Hiring and Access to Hayden

20. In August 2021, the District hired Holly Bauer as an eighth-grade Social Studies teacher. She was also given significant extracurricular access to students as junior high advisor and as a junior high and high school cross-country and track coach.

21. In the fall of 2021, Hayden, then thirteen years old and an eighth-grade student, became friends with Bauer's son, who had transferred into the District. That friendship provided Bauer with a pretext to draw Hayden into her home and personal orbit.

### B. Grooming—Fall 2021

22. From the outset, Bauer directed her attention toward Hayden rather than toward her own son. She routinely asked Hayden to come to her house and often texted Hayden directly rather than texting her son.

23. Within the first weeks of Hayden visiting the Bauer home, Bauer—in her living room, in the presence of her own children—asked Hayden whether he was a virgin. Hayden later described the interaction as "really uncomfortable."
24. In September 2021, Bauer and Hayden exchanged personal cell-phone numbers, and Bauer began texting him frequently from her personal phone. Shortly thereafter, Bauer added Hayden on Snapchat; her Snapchat account also included two other students.

**C. Sexual Abuse Begins—January 2022**

25. On or about January 15, 2022, Bauer invited thirteen-year-old Hayden to her home while her husband was away and her children were not present. Without warning, Bauer physically grabbed Hayden, led him to her bedroom, pushed him onto the bed, removed her clothing and his pants, and engaged in vaginal intercourse with him. Hayden did not consent. He has since described being scared and not knowing what to do.
26. A few weeks later, in late January 2022, Bauer again had sexual intercourse with Hayden at her residence, this time with her own minor children in the home.
27. Hayden has stated that Bauer had sex with him more than twenty times during the course of the relationship.
28. Bauer coerced Hayden's continued compliance through fear tactics. She instructed him that their relationship must remain secret and threatened consequences if he disclosed it. She also implicitly and explicitly leveraged his underage alcohol consumption at her home and his unlicensed driving of her vehicle to keep him from refusing her.

**D. Escalation and In-School Boundary Violations—Spring 2022**

29. In the spring of 2022, Bauer took Hayden on a family vacation. On Amazon, she purchased for him a Speedo swimsuit bearing the words "Delicious" across the front

and "Nothing Tastes Better" across the back, and she photographed him wearing it.

30. Bauer coordinated the District's eighth-grade Washington, D.C. trip and the Tomb of the Unknown Soldier wreath-laying essay contest. She told Hayden he did not need to submit the mandatory essay and would be selected regardless. Elaine Hess, the staff member ostensibly running the contest, later confirmed she did not select the winners, as she was given the names of students already chosen by Bauer.

31. Before Hayden had a driver's license or learner's permit, Bauer permitted him to drive her white Subaru Ascent, often while he was alone. On at least one occasion, Bauer instructed Hayden to pull off Huber Road into a secluded area, where she engaged in sexual intercourse with him.

32. Bauer obtained access to the mobile application monitoring Hayden's continuous glucose readings (Hayden has been a Type 1 diabetic since April 2019). The school nurse, Caitlyn Berg, acknowledged in her Title IX interview that it was "not typical for a teacher to have that type of access to a student's medical information," but she did not report it. Bauer used the glucose-monitoring pretext to summon Hayden to her classroom alone, including outside instructional periods.

33. Bauer frequently ate lunch alone with Hayden in her classroom, drew the blinds, and locked the door. After staff reported this as a safety issue, the principal issued a verbal correction that Bauer could not lock the door with a student inside. Following that warning, Bauer would leave for lunch and return with coffee for Hayden so she could continue spending the period alone with him.

**E. The District Is Placed on Actual Notice—March 2022**

34. In March 2022, teacher Jamie Gehring reported to Union President Scott Bauer (no relation) that Bauer and Hayden appeared to be in a sexual relationship. Gehring had personally seen a photograph of Bauer seated at her desk with Hayden resting his head on hers, and had received student reports that Hayden had crawled under Bauer's desk and placed his head in her lap during class.

35. Union President Scott Bauer dismissed the allegations as "just favoritism" with nothing sexual occurring. At a subsequent union executive meeting, the board was

told there was no evidence of sexual behavior and to “quit talking about it.” No investigation was opened. No report was made to the administration or to law enforcement.

36. Principal James Kaczor was independently on notice of Bauer's misconduct throughout the 2021-22 school year. Teachers reported to Kaczor that Bauer's son and his friends, including Hayden, congregated in Bauer's classroom and that students were not engaged in instruction. A parent warned Kaczor to "keep an eye on your teachers," and roughly a week and a half later the District received an email specifically identifying Bauer's relationship with Hayden. Staff also reported to Kaczor that Bauer had locked her classroom door with a student inside; Kaczor responded with only a verbal correction and took no protective or investigative action.
37. In spring 2022, a teacher reported to Kaczor and to Superintendent Kaple-Jones that a student had photographed Hayden resting his head on Bauer in class. A parent met with Kaczor in person to report that Hayden and Bauer had been "touchy" in the school auditorium. Kaczor said he would review camera footage and never followed up; the parent then escalated the complaint by email to Kaczor, the Union President, and the Superintendent. Despite this direct, repeated, and specific notice, Kaczor opened no investigation, imposed no protective separation between Bauer and Hayden, made no report to Hayden's parents, and made no report under R.C. § 2151.421.

**F. The 5K Race, the Photograph, and the May 2022 Complaints**

38. On April 30, 2022, at a District-sponsored 5K race, multiple community members observed Bauer and Hayden walking alone together with their arms around each other; the two were later spotted in an alley on Broad Street in Monroeville.
39. On May 4, 2022, a District parent telephoned Superintendent Dr. Kristin Kaple-Jones and reported what had been observed at the 5K race. That parent also reported that students had overheard Hayden say to Bauer in her history class, “What's it matter, you're going to go home and fuck John anyway,” to which Bauer allegedly responded,

"You know I sleep in my daughter's bed."

40. On May 5, 2022, Superintendent Kaple-Jones met with Union President Scott Bauer, Principal James Kaczor, and Holly Bauer. Bauer denied the allegations. The Superintendent's only directive was that Bauer "maintain an appropriate professional relationship" with Hayden. No protective separation was implemented. Hayden's parents were not notified. No Title IX investigation was opened.
41. On May 23, 2022, community members provided directly to Superintendent Kaple-Jones a photograph of Hayden resting his head on Bauer, which was circulating on social media. Inquiry into that photograph revealed that Hayden had been running personal errands for Bauer, including fetching her coffee.
42. On May 25, 2022, a community member sent Superintendent Kaple-Jones a follow-up email expressing renewed and heightened concern about Bauer's conduct with Hayden.
43. On May 26, 2022, the District issued Bauer a Notice of Pre-Disciplinary Meeting citing "an inappropriate and unprofessional relationship with a student…by engaging in unwarranted physical contact and using [the] student in furtherance of personal needs." The District again notified Children's Services; no investigation was conducted.
44. On May 27, 2022, the District held a disciplinary hearing.
45. On June 1, 2022, the District issued Bauer a written reprimand, stating: *"I have determined that you perpetuated an inappropriate and unprofessional relationship with a student, including by engaging in or permitting unwarranted physical contact with a student while in your classroom, and by using the student in furtherance of personal errands."* Bauer was found to have violated District Board Policy 3.05 (Staff Conduct) and to have violated the May 5, 2022 directive.
46. Despite these findings, the District did not separate Bauer from Hayden, did not notify Hayden's parents, did not initiate a Title IX investigation, and did not undertake any measures reasonably calculated to protect Hayden from further harm. Bauer remained in the classroom with continuing unsupervised access to Hayden.

47. Contemporaneous internal District emails from this period reflect that Bauer's relationships with students had “lines and boundaries [that] are completely blurred, if not crossed” and that this was “a serious struggle.”

48. On June 10, 2022, Hayden's parents—not the District—contacted the school seeking answers about community rumors regarding their son. When Jodi and Casey confronted Hayden, he repeated a false narrative Bauer had instructed him to provide.

49. On the evening of June 10, 2022, Hayden messaged Bauer's husband, John Bauer, on Facebook Messenger, asking him to provide Bauer's Truth Social username and to download the app Discord so Hayden could secretly communicate with Bauer outside his parents' view.

50. In June 2022, immediately after Bauer was banned from the D.C. trip, Bauer's Snapchat account was deleted, destroying evidence of her communications with Hayden. Bauer had also communicated with Hayden through a second Snapchat account created in her daughter's name.

**G. The Abuse Continues—2022–2023**

51. After the June 2022 reprimand, Bauer remained Hayden’s teacher at Monroeville City Schools. The sexual abuse continued, at Bauer's home, in her vehicle, and elsewhere, through at least September 9, 2023. During this period:

- A separate school employee and mandatory reporter observed Bauer and Hayden together at a local coffee shop after the June 1, 2022 reprimand and did not report it;
- Bauer continued to bring Hayden into her classroom alone using the glucose-monitoring pretext, notwithstanding the principal's earlier verbal warning;
- Hayden's diabetes markers deteriorated dramatically. His HbA1c climbed from 8.4% in November 2021 to 9.2% in March 2022, 10.8% in July 2022, 10.7% in September 2022, 11.5% in September 2023, and peaked at 12.6% in January 2024. On September 26, 2022, he suffered a suspected mild DKA episode. His treating endocrinologist has documented that his A1c "has steadily worsened" since the abuse began.

**H. The End of the Relationship—September 9, 2023**

52. In the summer of 2023, Hayden began trying to distance himself from the Bauer family. Bauer responded by texting him about his favorite dinner being ready, requesting help with her cheesecake business, and, when he did not respond,

demanding that he come over to care for the chickens she kept for him at her property.

53. On September 9, 2023, Hayden's parents were at a wedding in Columbus, and the Bauers knew they were out of town. That evening, Bauer and Hayden got into a disagreement over a romantic interest of Hayden’s. Hayden left the Bauer residence and went home.

54. Bauer and her son appeared at the Ryan residence where she was in a state of panic. At that time, Hayden and his brother were the only people home. Bauer and her son entered the residence and demanded to know where Hayden was. At this time, they were told he was in his room.

55. Hayden refused to open his bedroom door. Bauer called him approximately forty times, texted him, and physically pounded, pushed, and beat on his bedroom door while crying and telling him he was her best friend. Hayden sat with his back against the door and told his mother by text that if Bauer was still there when he had to leave for work, he would jump out the window. Bauer only left after Hayden's mother directly called her and demanded she do so.

56. Following that night, Hayden removed all of his belongings, including his chickens, from the Bauer residence. Bauer then began publicly slandering Hayden's name at school, including calling him a “fat ass” and mocking his talent-show performance during a school function.

**I. Disclosure, Investigation, and Confirmation—2024–2025**

57. On August 11, 2024, at the Huron County Fair, Hayden approached teacher Jamie Gehring, who had reported the concerns in March 2022, and told her, *“I want to thank you for trying to get me away from her.”*

58. On September 26, 2024, after learning that Bauer had called him a “fat ass” in class, Hayden emailed Superintendent Kaple-Jones stating he needed to speak with her and that it was “super important.” That evening, Hayden disclosed to the Superintendent the truth about Bauer's grooming and sexual abuse. The Superintendent immediately contacted the Monroeville Police Department, which referred the matter to the Huron County Sheriff's Office.

59. On September 27, 2024, Bauer was placed on paid administrative leave.
60. On September 30, 2024, Hayden disclosed to school counselor Jen Harvey that Bauer had continued to contact him after the 2022 reprimand, including through a new Snapchat account Bauer created in her daughter's name. Harvey reported this to Detective Frank Gleason at the Huron County Sheriff's Office and to the Superintendent.
61. On October 2, 2024, Hayden was forensically interviewed at the Kidz First Child Advocacy Center at the Nord Center in Norwalk, Ohio. During that interview, Hayden described the relationship as "weird" but denied a sexual relationship. Shortly thereafter, he told counselor Harvey he had not been honest.
62. Hayden's initial denial of the sexual relationship at the October 2, 2024 forensic interview is consistent with the well-documented response patterns of adolescent victims of adult sexual grooming and abuse. Delayed, incremental, and initially minimizing or contradictory disclosure is a recognized feature of the grooming dynamic, in which the abuser cultivates emotional dependency, secrecy, shame, and fear of consequences in the child. Hayden had been groomed by Bauer for years, told by her that disclosure would end her career and destroy her family, and interviewed while still under the psychological control she had established. His subsequent correction of that denial to counselor Harvey twelve days later, and his consistent disclosures thereafter, reflect the ordinary course of trauma-informed disclosure, not a lack of credibility.
63. On October 14, 2024, in counselor Harvey's office, Hayden admitted he had lied at the forensic interview, disclosed the sexual relationship, and stated, *"I guess I was raped."* Harvey found him fully credible.
64. On October 17, 2024, Huron County Children's Services opened a formal investigation.
65. Superintendent Kaple-Jones's personal response to the 2022 reports was independently deficient. Despite receiving actual notice of the May 4, 2022 parent complaint about the 5K observations, the May 23, 2022 photograph of Hayden with

Bauer, and the May 25, 2022 community follow-up email, Kaple-Jones: (a) opened no meaningful investigation into Bauer's conduct, limiting her inquiry to a cursory review of gym video and a single interview in which Bauer denied wrongdoing; (b) opened no Title IX investigation or comparable protective process at any point in 2022, despite her personal knowledge of "unwarranted physical contact" and Bauer's use of Hayden "in furtherance of personal needs," and despite her later admission that "a thorough investigation should have been completed in 2022"; (c) imposed no protective separation of Bauer from Hayden, issuing only a verbal directive to "maintain a professional relationship" and a written reprimand, while knowingly allowing Bauer to remain in the classroom with continued unsupervised access to Hayden, including permitting him to accompany Bauer's family on summer vacation as she observed on social media; (d) did not notify Hayden's parents of the specific misconduct allegations, the photograph, or the reprimand at any point in 2022, so that parental awareness arose only when Hayden's parents themselves contacted the District on June 10, 2022 about community rumors; and (e) made no effective report under R.C. § 2151.421 reasonably calculated to trigger protective action, calling Children's Services once about the pre-disciplinary notice with the result that "no investigation was conducted," and taking no further reporting steps despite continuing red flags.

66. On October 29, 2024, the District engaged Kelly Liberti of Liberty Investigative Services, LLC, to conduct a Title IX investigation.
67. On November 6–7, 2024, Casey Ryan and Jodi Reising filed a formal Title IX complaint on Hayden's behalf, stating: *"I had sexual intercourse with my teacher Holly Bauer on a regular basis for more than a year. I was forced into it and felt I couldn't leave the situation."*
68. On December 10, 2024, investigator Liberti interviewed Bauer at the Huron Public Library. Liberti's report documented significant discrepancies between Bauer's accounts and those of every other witness, including Bauer's own children.

Investigator Liberti's report expressly noted that Bauer had told "many lies" during her interview.

69. On February 10, 2025, Liberti's Report of Investigation was provided to the parties. The report confirmed that multiple complaints concerning Hayden's safety had been made and brought to the District's attention beginning in 2022; that the District had failed to initiate a Title IX investigation when those initial concerns arose; and that this failure allowed Bauer to delete digital content that "may have contained critical evidence of her misconduct." Liberti concluded that student and teacher witnesses were credible, and that their accounts were corroborated through multiple, independent sources.

70. On March 7, 2025, Bauer was arrested on an initial charge of Rape.

71. On March 14, 2025, a Huron County Grand Jury indicted Bauer on charges arising from her conduct against Hayden, including Rape, Sexual Battery under Ohio Revised Code § 2907.03 (the Ohio statute criminalizing sexual conduct between a teacher and a student), Unlawful Sexual Conduct with a Minor, Burglary, Trespass, and Failure to Comply with Underage Alcohol Laws.

72. The Huron County criminal matter was later dismissed by the prosecutor after issues arose concerning the use of statements obtained from Bauer and other public-employee witnesses under circumstances implicating *Garrity* and related public-employee immunity protections. The dismissal did not resolve the truth of Hayden's allegations and does not negate the District's own Title IX findings.

73. On June 5, 2025, the District's Title IX Appeal Decision Maker issued a final resolution *affirming the original decision maker's determination that "the evidence does support the conclusion that Respondent engaged* in serious misconduct in violation of Board Policy 3.05 - 'Staff Conduct,' as well as the Licensure Code of Professional Conduct for Ohio Educators," and that "[t]he vast scope of Respondent's misconduct, which included the grooming of a child, violations of criminal law, and violations of a directive she had received from the District to maintain a professional relationship with Complainant, provide just cause for the termination of her

employment."

74. The Appeal Decision Maker further reversed the original decision maker's contrary Title IX finding, holding that the original decision "did not sufficiently evaluate the totality of the evidence-particularly the Complainant's testimony, corroborative peer disclosures, and patterns of grooming and misconduct." Applying Board Policy 9.10 and the Licensure Code of Professional Conduct for Ohio Educators' definition of grooming, the Appeal Decision Maker concluded that "[t]he finding of grooming based upon the relevant evidence supports the conclusion that Respondent engaged in unwelcome conduct that a reasonable person would determine is so severe, pervasive, and objectively offensive that it effectively denied Complainant equal access to the school's education program or activity," and that Respondent's "pattern of conduct . . . meets the threshold of sexual harassment under the Board's policy." The Appeal Decision Maker ruled: "Accordingly, I hereby reverse the Decision Maker's determination that no sexual harassment occurred."

75. On November 12, 2025, the District released Bauer from employment following expiration of her teaching license.

**J. Summary of The District's Pattern of Deliberate Indifference**

76. The District had actual knowledge of a substantial danger to Hayden by no later than May 4, 2022, when Superintendent Kaple-Jones, an “appropriate person” with authority to institute corrective measures, received the 5K-race complaint. That actual knowledge deepened on May 5, 2022 (interview and directive to Bauer), May 23, 2022 (photograph delivered to the Superintendent), May 25, 2022 (follow-up community email), May 26, 2022 (Notice of Pre-Disciplinary Meeting), and June 1, 2022 (written reprimand finding “unwarranted physical contact” and misuse of the student).

77. In response to that actual knowledge, the District did not separate Bauer from Hayden, did not notify Hayden's parents, did not initiate a Title IX investigation, did not remove Bauer's access to Hayden through classroom, coaching, extracurriculars, or the D.C. trip planning, and did not effectively engage children-services authorities.

78. The District's decision not to notify Hayden's parents after the May and June 2022 reports was not an oversight. It was a knowing choice by officials who had authority to act, who understood the risk that Bauer posed, and who elected to keep the reports and the underlying misconduct concealed from the family whose child was at risk. That concealment deprived Hayden's parents of the ability to protect their son and directly enabled Bauer's continued access to him.

79. Superintendent Kaple-Jones has since acknowledged that "a thorough investigation should have been completed in 2022."

80. The District's failure to act after documented notice, and in the face of internal admissions that staff-student "lines and boundaries" were "blurred, if not crossed," permitted Bauer to continue and escalate her abuse of Hayden for more than two additional years, and directly enabled the destruction of digital evidence that would have supported both civil and criminal accountability.

**K. Injuries to Hayden and to Plaintiff-Parents**

81. Defendants' conduct constituted a continuing course of tortious and unconstitutional conduct extending through November 12, 2025, when Bauer was finally released from employment. Hayden, a minor at all relevant times, did not and could not have fully appreciated the nature, wrongfulness, or extent of Bauer's conduct or of his own injuries until his disclosures beginning in 2024 and the District's June 5, 2025 Title IX finding confirming Bauer's misconduct. All applicable limitations periods are therefore tolled by Hayden's minority, by the discovery rule, and by the continuing-violation doctrine, and this action is timely as to all pre-2023 conduct.

82. As a direct and proximate result of Bauer's conduct and the District's deliberate indifference, Hayden has suffered and continues to suffer severe injuries, including:

- Sexual assault and battery, including repeated non-consensual sexual intercourse beginning at age 13;
- Severe emotional distress, anxiety, depression, and post-traumatic symptoms, requiring ongoing counseling with William Myers of the Association for Private Counseling and with school counselor Jen Harvey;

- Documented, sustained deterioration of his Type 1 diabetes control, including HbA1c rising from 8.4% in November 2021 to a peak of 12.6% in January 2024; continuous-glucose-monitor data showing average glucose of 218 mg/dL with >60% hyperglycemia during October–November 2022 and a 14-day average of 318 mg/dL with only 14% time-in-range in September 2023; a suspected DKA episode on September 26, 2022; and a September 11, 2024 emergency-department presentation at Fisher-Titus Medical Center with triage glucose of 389 mg/dL "not coming down with insulin," requiring 2,000 mL of IV saline. As of July 2025, his A1c remained 9.8–10.1, and his treating physician has documented that he "is struggling to gain control of [his] diabetes" and is "very concerned for diabetes-related complications";
- Loss of educational opportunity, declining academic performance, and social withdrawal;
- Loss of enjoyment of life; and
- Past and future medical, therapeutic, and educational-remediation expenses.

83. As a direct and proximate result of Defendants' conduct, Plaintiffs Jodi Reising and Casey Ryan have suffered and continue to suffer damages, including loss of the services, society, and consortium of their then-minor child, and have incurred and will incur expenses for Hayden's medical, mental-health, and educational-remediation needs.

## V. CLAIMS FOR RELIEF

### COUNT I—Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a)

### (Against Monroeville Local Schools Board of Education)

84. Plaintiffs incorporate by reference all preceding paragraphs 1-74.

85. Title IX prohibits discrimination on the basis of sex in any education program or activity receiving federal financial assistance. 20 U.S.C. § 1681(a). Teacher-on-student sexual harassment and abuse constitutes discrimination on the basis of sex actionable under Title IX. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999).

86. To recover damages under Title IX in a teacher-on-student case, a plaintiff must show that: (a) an "appropriate person" at a federally funded educational institution had actual knowledge of facts indicating a substantial danger to a student, and (b) the institution responded with deliberate indifference; a response "clearly unreasonable in

light of the known circumstances." *Gebser*, 524 U.S. at 290–92; *Davis*, 526 U.S. at 648.

87. The District at all times received federal financial assistance and is subject to Title IX.

88. Superintendent Kaple-Jones was an "appropriate person" under *Gebser*. As Superintendent, she had authority to receive reports of staff misconduct, direct administrators and staff, initiate or cause the initiation of corrective measures, and protect students from known risks posed by District employees.

89. The District had actual notice of a substantial danger to Hayden by no later than May 4, 2022. The District had additional notice through repeated reports across May and June 2022 of an escalating and inappropriate teacher-student relationship involving a thirteen-year-old male student. The District's own written reprimand of June 1, 2022 found that Bauer had engaged in "unwarranted physical contact" with a student and had used a student "in furtherance of personal errands."

90. The District's response: a verbal directive, followed by a written reprimand, with no separation of the teacher from the student, no notification of parents, no Title IX investigation, no functional referral to child-protective authorities, and continued unsupervised access was clearly unreasonable in light of the known circumstances. That response is a paradigmatic example of deliberate indifference under *Davis*.

91. Bauer's harassment of Hayden was severe, pervasive, and objectively offensive. It included repeated sexual intercourse with a minor student, in-school grooming behaviors, exploitation of his medical condition, isolation in a locked classroom, and coercive silencing. It deprived Hayden of access to educational opportunities and benefits provided by the District within the meaning of Title IX. The District compounded that deprivation after Hayden reported the abuse by permitting Bauer to remain on campus with continued access to students and by tolerating her disparagement of Hayden within the school community, creating and perpetuating a hostile educational environment that further denied him equal access to the District's programs.

92. As a direct and proximate result of the District's deliberate indifference, Hayden suffered and continues to suffer the injuries described above.

**COUNT II—42 U.S.C. § 1983—Fourteenth Amendment Violation (Substantive Due Process—Right to Bodily Integrity)**

**(Against Holly Bauer, Dr. Kristin Kaple-Jones, and James Kaczor, in their individual capacities and at all relevant times employed by Monroeville City Schools).**

93. Plaintiffs incorporate by reference all preceding paragraphs.

94. A public-school student has a clearly established Fourteenth Amendment substantive-due-process right to bodily integrity, and a teacher's sexual abuse of a student violates that right. *See Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996).

95. Defendant Bauer, at all relevant times, acted under color of state law by virtue of her position as a teacher and coach employed by the District.

96. Defendant Kaple-Jones, at all relevant times, acted under color of state law by virtue of her position as Superintendent of the District and her authority over student safety, staff discipline, Title IX compliance, investigations, and corrective measures.

97. Bauer used her state-conferred authority, including her classroom access, coaching access, unsupervised time with a minor student, and access to Hayden's medical monitoring to sexually abuse Hayden, in direct violation of his clearly established constitutional right to bodily integrity.

98. Kaple-Jones, after receiving actual notice of facts showing a substantial danger that Bauer was exploiting her authority over Hayden, used her state-conferred authority to leave Bauer in positions of classroom, coaching, extracurricular, and unsupervised access to Hayden, failed to implement protective separation, failed to notify Hayden's parents, and failed to initiate a Title IX investigation or other corrective measures reasonably calculated to protect Hayden.

99. Bauer's conduct was intentional, malicious, and shocking to the conscience. Kaple-Jones's failure to protect Hayden after actual notice of a substantial risk of sexual abuse by a District teacher, while leaving Bauer with continued access to Hayden, was deliberately indifferent and shocking to the conscience.

100. Defendant Kaczor, at all relevant times, acted under color of state law by virtue of his position as Principal of Monroeville Middle and High School and his authority over building-level staff supervision, student safety, discipline, mandatory reporting, and referral of misconduct for investigation. After receiving actual notice of facts showing a substantial danger that Bauer was exploiting her authority over Hayden, Kaczor used his state-conferred authority to leave Bauer in classroom, coaching, and unsupervised access to Hayden, failed to implement protective separation, failed to notify Hayden's parents, and failed to initiate a Title IX investigation or other corrective measures reasonably calculated to protect Hayden. His failure to protect Hayden, while leaving Bauer with continued access to him, was deliberately indifferent and shocking to the conscience.

101. As a direct and proximate result of Bauer and Kaple-Jones's conduct, Hayden suffered and continues to suffer the injuries described above.

**COUNT III—42 U.S.C. § 1983—Monell Liability (Fourteenth Amendment—Right to Bodily Integrity)**

**(Against Monroeville Local Schools Board of Education)**

102. Plaintiffs incorporate by reference all preceding paragraphs.

103. A municipal entity such as the District and its Board of Education may be held liable under 42 U.S.C. § 1983 where an official policy, custom, or practice, including a failure to train or supervise, is the "moving force" behind a constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

104. The District, acting through Superintendent Kaple-Jones, the Board of Education, and other officials with final authority over student safety, staff discipline, Title IX compliance, staff training, and supervision, maintained a custom of acquiescence in known staff-student boundary violations. That custom is evidenced by the District's tolerance of Bauer's escalating misconduct despite documented notice, the Board's failure to require corrective action after the June 1, 2022 written reprimand, the District's failure to enforce its own Staff Conduct policy, and internal District emails acknowledging that staff-student "lines and boundaries are completely

blurred, if not crossed."

105. The District failed to train and supervise its employees, including administrators, teachers, coaches, the school nurse, mandatory reporters, and the Title IX Coordinator, regarding the recognition of grooming behaviors, the mandatory-reporting statutes, and the immediate obligations imposed by Title IX and the Fourteenth Amendment when a student is at risk of sexual abuse by a District employee.

106. The need for such training and supervision was obvious because District employees worked daily with minor students, exercised authority over students in classrooms, athletics, and extracurricular activities, and were required to recognize and report suspected abuse. The District's failure was also demonstrated by repeated staff failures to report or escalate known boundary violations involving Bauer and Hayden, including reports of locked-door lunches, unusual access to Hayden's medical information, and repeated one-on-one contact after the June 1, 2022 reprimand.

107. These policies, customs, and failures were the moving force behind the violation of Hayden's Fourteenth Amendment right to bodily integrity, and directly enabled Bauer's continued and escalating abuse of Hayden after the District had actual knowledge of the danger she posed.

108. Separately, the District's final policymakers, including the Superintendent and the Board of Education, ratified Bauer's unconstitutional conduct by keeping her in the classroom, with continued unsupervised access to Hayden, after issuing the June 1, 2022 written reprimand that documented her inappropriate physical contact with a student and use of a student for personal errands. That ratification is independently a basis for municipal liability under 42 U.S.C. § 1983.

109. As a direct and proximate result, Hayden suffered and continues to suffer the injuries described above.

**COUNT IV —Assault and Battery**

**(Against Defendant Holly Bauer)**

110. Plaintiffs incorporate by reference all preceding paragraphs.

111. Bauer intentionally caused harmful and offensive contact with Hayden's person, including sexual touching and repeated sexual intercourse, without lawful consent. Under Ohio law, a person under the age of consent, or in a teacher-student relationship subject to R.C. § 2907.03, cannot lawfully consent to sexual conduct with a teacher.

112. Bauer's conduct was willful, wanton, and malicious.

113. As a direct and proximate result of Bauer's assault and battery, Hayden has suffered damages as described above.

**COUNT V — Intentional Infliction of Emotional Distress**

**(Against Defendant Holly Bauer)**

114. Plaintiffs incorporate by reference all preceding paragraphs.

115. Bauer's conduct, including the sexual abuse of a thirteen-year-old student, the coercive silencing of that student, the exploitation of his medical condition, the September 9, 2023 incident at his home, and her subsequent slander of him within the school, was extreme and outrageous, beyond all bounds of decency tolerated in a civilized society.

116. Bauer intended to cause Hayden severe emotional distress, or acted with reckless disregard for the probability that severe emotional distress would result.

117. Hayden has suffered and continues to suffer severe emotional distress as a direct and proximate result of Bauer's conduct.

**COUNT VI—Breach of Fiduciary Duty / In Loco Parentis**

**(Against Holly Bauer)**

118. Plaintiffs incorporate by reference all preceding paragraphs.

119. As Hayden's teacher and coach, Bauer stood in a position of trust and authority, in loco parentis, during Hayden's school-related activities. That relationship imposed a fiduciary duty to act in Hayden's best interests, protect him from harm, and refrain from exploiting the power imbalance inherent in the teacher-student

relationship.

120. Bauer breached that fiduciary duty by grooming, sexually abusing, coercing, and exploiting Hayden.

121. As a direct and proximate result, Hayden has suffered damages as described above.

**COUNT VII—Negligence; Negligent Hiring, Retention, Training, and Supervision; Failure to Supervise**

**(Against Monroeville Local Schools Board of Education, Dr. Kristin Kaple-Jones and James Kaczor in their official and individual capacities)**

122. Plaintiffs incorporate by reference all preceding paragraphs.

123. The District owed Hayden, a minor student in its care, a duty of ordinary and reasonable care to provide a safe educational environment, to comply with the mandatory-reporting obligations imposed by Ohio law, including R.C. § 2151.421, and to hire, train, supervise, and retain teachers, coaches, and administrators in a manner consistent with that duty.

124. To the extent Defendants assert immunity under R.C. Chapter 2744, Plaintiffs plead that the injuries alleged herein were caused by acts or omissions outside the scope of employment, undertaken with malicious purpose, in bad faith, or in a wanton or reckless manner, and by duties and liabilities expressly imposed by statute, including Ohio's mandatory-reporting laws.

125. The District breached those duties by, among other things:

- Failing to supervise Bauer's interactions with students after the March 2022 complaint by teacher Jamie Gehring;
- Failing to investigate or act meaningfully on complaints received in April, May, and June 2022 regarding Bauer's conduct with Hayden;
- Failing to notify Hayden's parents;
- Failing to separate Bauer from Hayden;
- Failing to enforce Board Policy 3.05 or the June 1, 2022 written reprimand;
- Failing to train and supervise the school nurse, coaching staff, and other personnel regarding boundary violations, grooming, and mandatory reporting; and

- Retaining Bauer as a classroom teacher and coach with continued unsupervised access to Hayden after receiving actual notice of an inappropriate teacher-student relationship.

- Defendant James Kaczor, as building Principal, personally received repeated reports of Bauer's inappropriate conduct with students, including with Hayden, and responded with, at most, verbal corrections. He failed to investigate, failed to escalate to a Title IX or child-protective process, failed to separate Bauer from Hayden, failed to notify Hayden's parents, and failed to discharge his mandatory-reporting obligations under R.C. § 2151.421. His acts and omissions were reckless, wanton, and undertaken in bad faith, and fall outside the protections of political-subdivision immunity under R.C. Chapter 2744.
- Defendant Dr. Kristin Kaple-Jones, as Superintendent and the District's Title IX-designated appropriate person, personally received the May 4, 2022 parent phone complaint about the 5K observations, the May 23, 2022 photograph of Hayden with Bauer, and the May 25, 2022 community follow-up email, and personally issued Bauer a written reprimand on June 1, 2022 finding "unwarranted physical contact" and use of the student "in furtherance of personal needs." Despite that actual knowledge, she opened no meaningful investigation, opened no Title IX investigation at any point in 2022, imposed no protective separation of Bauer from Hayden, did not notify Hayden's parents of the specific misconduct allegations, the photograph, or the reprimand, and made no effective report under R.C. § 2151.421—her single call to Children's Services yielded no investigation and was not followed up despite continuing red flags, including her observation on social media that Hayden accompanied the Bauer family on summer vacation. She later admitted that "a thorough investigation should have been completed in 2022." Her acts and omissions were reckless, wanton, and undertaken in bad faith, and fall outside the protections of political-subdivision immunity under R.C. Chapter 2744.

126. As a direct and proximate result of the District's breaches, Hayden has suffered and continues to suffer damages as described above. Defendants' acts and omissions were outside the protections of political-subdivision immunity to the extent they were reckless, wanton, malicious, in bad faith, outside the scope of employment, or subject to liability expressly imposed by statute.

**COUNT VIII—Loss of Consortium and Services (Parental Claims)**

**(Against All Defendants)**

127. Plaintiffs Jodi Reising and Casey Ryan incorporate by reference all preceding paragraphs.

128. As a direct and proximate result of Defendants' conduct, Plaintiff-Parents have suffered loss of the services, society, companionship, and consortium of their then-

minor son, Hayden, and have incurred and will continue to incur substantial expenses for his medical, mental-health, and educational-remediation needs.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Enter judgment in favor of Plaintiffs and against Defendants on each count set forth above;

B. Award Plaintiff Hayden Ryan compensatory damages in an amount to be determined at trial, including but not limited to damages for past and future physical injury, pain and suffering, severe emotional distress, medical and mental-health expenses, loss of educational opportunity, and loss of enjoyment of life;

C. Award Plaintiffs Jodi Reising and Casey Ryan compensatory damages for their derivative claims, including loss of consortium and medical, mental-health, and educational-remediation expenses;

D. Award punitive damages against Defendant Holly Bauer in an amount to be determined at trial;

E. Award prejudgment and post-judgment interest as permitted by law;

F. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 20 U.S.C. § 1681 *et seq.*, and any other applicable authority; and

G. Grant such other and further relief as this Court deems just and proper.

## VII. JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

Dated: September 11, 2026

Respectfully submitted,

*/s/ Leslie O. Murray*
Leslie O. Murray (0081496)
leslie@lesliemurraylaw.com
John T. Murray (0008793)
john@lesliemurraylaw.com
LESLIE MURRAY LAW LLC
316 E. Water Street
Sandusky, Ohio 44870
Phone: (419) 502-1024
Fax: (419) 502-0290
*Counsel for Plaintiffs*